STEERS SAND & GRAVEL CORPORATION
v. THE HENRY O'BRIEN et al.
THE H. S. INC. NO. 11.

No. 16828.

District Court, E. D. New York.

May 23, 1944.

Alexander & Ash, of New York City (Edward Ash and Joseph M. Meehan, both of New York City, of counsel), for libellant.

Burlingham, Veeder, Clark & Hupper, of New York City (Stanley R. Wright, of New York City, of counsel), for claimant and respondent.

GALSTON, District Judge.

On the afternoon of April 5, 1943, loaded scows H. S. Inc., No. 78 and H. S. Inc., No. 11, were towed to Pier 9, Brooklyn, and made fast outside of two light scows. The No. 78 was placed abreast of the outshore of these two scows and was secured by lines from its forward and after corners on its starboard side. Astern of

the No. 78 was the No. 11, with her bow secured to the 78's stern by means of two mooring lines. I accept the position of the vessels as given on libellant's Exhibit 1, and reject the description given by Macomber, captain of the tug Henry O'Brien. His testimony was not given with conviction and cannot be reconciled with the sketch attached to the report prepared by him shortly after the happening of the accident hereafter to be described.

The tug, Henry O'Brien, engaged in shifting operations in the slip on the morning of April 6, 1943, first shifted some light scows from which ballast had theretofore been discharged, from the side of a steamer in the slip. Then orders were received by the tug-boat from the stevedores to move the two sand scows, the 78 and the 11, alongside the ship.

The tug accordingly left the slip and maneuvered to the port side of the 78, and was told by the captain of the 78 first to take the No. 11. Someone on the tug then ordered the man on the 78 to let go the line from the starboard stern bitt of the 78 to the starboard bow bitt of the No. 11, and placed a line on the bow bitt of the tug-boat to the port stern bitt of the No. 11. The tug then started to pull with the consequence that the line between the second in-shore vessel and the third in-shore vessel, shown on libellant's Exhibit 1 as the Green Pond and Elsie R, broke.

Then the boats swung around in the tide, and the tug was unable to hold them. At the time there was a vessel, the Lackawanna No. 404, lying at the end of Pier 8, and as the flotilla swung around in that direction there was danger of the tug being smashed against the vessel at the end of the pier. Counsel in response to the court's question admitted that the tug had a head line to the scow, and that the line was let go in order to prevent the tug's contact with the Lackawanna. The imminence of such contact was confirmed by the testimony of Galenci, captain of the scow No. 78. The result was that though the tug was saved, the No. 11 came into contact at its starboard corner quarter with the Lackawanna No. 404.

During these operations there was a strong flood tide and a fifty mile northeast wind. The evidence forces the conclusion that the damage was caused not because of the position of the scows at the time that they were brought up on April 5th, but through the faulty maneuvering of the tug when she endeavored to shift to the slip, for I believe that Macomber's contention that the line from the Green Pond parted before he arrived outside the slip is not sustained by the evidence.

The libellant may have a decree. Appropriate findings of fact and conclusions of law will be filed concurrently with this opinion.